UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOWN CENTER MALL, *et al.*, § | | |
| § | | |
| *Plaintiffs,* § | | |
| § | | |
| v. § | | CIVIL ACTION H-10-1913 |
| § | | |
| ZURICH AMERICAN INSURANCE COMPANY, § | | |
| § | | |
| *Defendant.* § | | |

**ORDER**

Pending before the court are the parties' cross-motions for summary judgment. Dkts. 10 and 11. Upon review of the motions, the response, and the applicable law, defendant Zurich American Insurance Company's ("Zurich") motion is GRANTED, and plaintiffs' motion is DENIED.

**I. BACKGROUND**

This is a declaratory judgment action that was filed in state court but then removed to this court on the basis of diversity of citizenship. Town Center Mall, L.P., Boxer Property Management Corporation, Grupo Zocalo, L.P., and Grupo Zocalo Management, L.L.C. ("plaintiffs") are the defendants in a lawsuit pending in the 191st Judicial District Court of Dallas County, Texas, styled *Gary Switzer v. Grupo Zocalo Mgm't, L.L.C., Grupo Zocalo, L.P., Town Ctr. Mall, L.P., Bagby Elevator Co., Inc, and Thyssenkrup Elevator Corp*, Cause No. 2011-00722. Dkts. 10, 11. Switzer originally filed suit in Harris County, Texas. *Id*. The lawsuit was re-filed in Dallas County after Switzer nonsuited his claims against all parties without prejudice. *Id*. Switzer alleges that he was injured while working for Schindler Elevator Corporation ("Schindler") as an elevator technician. *Id*.

On February 20, 2009, Switzer was working at La Gran Plaza Mall, a shopping mall located in Fort Worth, Texas. Dkt. 11-2 at 6. La Gran Plaza is owned by Town Center Mall, L.P. ("Town

Center") and is managed by Grupo Zocalo, L.P. ("Grupo Zocalo") and Grupo Zocalo Management, L.L.C. ("Grupo Zocalo Management") *Id*. To complete the repair job, Switzer had to step on the escape hatch located at the top of the freight elevator. *Id*. However, the welds securing the escape hatch on the elevator were broken and Switzer fell through the ceiling, and suffered serious injuries as a result. *Id.* at 7. Twice prior to Switzer's injuries, on March 20, 2006 and February 26, 2008, the Texas state elevator inspector cited the freight elevator for broken welds on the hatch Switzer fell through. *Id.* at 7. Hence, Switzer asserts claims in the underlying state court litigation against plaintiffs for negligence and failure to warn. *Id*.

Zurich issued Commercial General Liability Policy ("CGL Policy") No. GLO 6445435-18 to Schindler with a one year policy period starting January 1, 2009. Dkt. 11-3, 11-4, 11-5, at 62-162. Schindler is the named insured on the policy. *Id*. Zurich also issued Owners and Contractors Protective Liability Policy ("OCP Policy") No. OC 6637025 to Grupo Zocalo for the same time period. Dkt. 11-5 at 163-172. Grupo Zocalo Management and Town Center are listed as additional insureds on the OCP Policy. *Id*. at 163. Both the OCP Policy and CGL Policy have a limit of $2,000,000 per occurrence. *Id*. at 151, 163. The CGL policy has an aggregate limit of $5,000,000 while the OCP policy has an aggregate limit of $2,000,000. *Id*. at 151, 163.

On September 22, 2009, counsel for Grupo Zocalo and Grupo Zocalo Management sent a letter to Zurich requesting a defense and indemnity under the CGL Policy[1] with respect to Switzer's lawsuit. Dkt. 11-2 at 1. On January 27, 2010, plaintiffs' counsel sent a second letter with a copy of the First Amended Petition filed in the underlying litigation, which added Town Center and Boxer Property Management ("Boxer Property") as defendants. *Id*. at 17-18. Plaintiffs' counsel advised that they also represented Town Center and Boxer Property and requested that Zurich provide a

---

[1]There are no documents showing a request under the OCP Policy, but it is apparent from the parties' pleadings that a demand under the OCP Policy was made at some point.

defense and indemnity to all plaintiffs as additional insureds under the CGL Policy issued to Schindler. *Id.*

The relevant facts asserted in the underlying litigation filed by Switzer are as follows:

> 9.      It has become necessary to bring this action because of serious injuries and damages sustained by Plaintiff, Gary Switzer, on February 20, 2009, at La Gran Plaza Mall in Fort Worth, Texas. On that date, Plaintiff, Garry Switzer, was employed as an elevator technician for Schindler Elevator located in Irving, Texas. Mr. Switzer was dispatched to a job at the La Gran Plaza Mall in Fort Worth, Texas to work on a freight elevator in the mall. La Gran Plaza Mall is owned by Town Center Mall, L.P. It is managed by Defendant Grupo Zocalo, L.P. and its general partner, Grupo Zocalo Management, L.L.C. In order to accomplish the job Mr. Switzer was assigned to do, he had to step on the escape hatch on the top of the freight elevator. Mr. Switzer had stepped on the escape hatches numerous times in his line of work as an elevator technician and this practice was common in the industry. However, the welds securing the hatch on the freight elevator in question were broken. For this reason, when Mr. Switzer stepped on the hatch, he fell through the ceiling of the elevator landing ten feet below on the floor of the elevator car. Mr. Switzer sustained serious injuries as a result of this accident.
>
> 10.     On March 20, 2006 and February 26, 2008, the freight elevator in question had been cited by a Texas state elevator inspector for the broken welds on the hatch through which Mr. Switzer fell. This citation was given and Defendants were aware of the elevator's damaged condition almost two years before Mr. Switzer was injured. Even though Defendants were aware of the freight elevator's damaged condition, they made no attempt to repair the elevator and as result of Defendants' omission, Mr. Switzer was seriously injured.
>
> 23.     Defendants. . . . fail[ed] to adequately warn Plaintiff of the broken welds and fail[ed] to make the condition reasonably safe.

Dkt. 1-7 at 3-4, 8-9. Plaintiffs are seeking declaratory judgment regarding Zurich's duty to defend against Switzer's suit. Dkt. 1-3 at 8. Plaintiffs contend that the allegations made in the Switzer lawsuit trigger Zurich's duty to defend and indemnify under both the OCP Policy issued to Grupo Zocalo, and the CGL Policy issued to Schindler. *Id.* at 7. Zurich responds, first, that exclusion "d" of the OCP Policy excludes coverage for the injury alleged in the underlying litigation. Dkt. 11 at 10. Next, Zurich argues that plaintiffs do not qualify as "additional" insureds under the CGL Policy issued to Schindler and are, therefore, not entitled to coverage thereunder. Dkt. 1-4 at 2. Finally,

3

Zurich argues that the claims asserted against plaintiffs in the underlying lawsuit do not fall within the defense and indemnity provisions of the Blanket Additional Insured Endorsement of the CGL Policy, or that coverage under that policy is otherwise excluded by the terms of the the Elevator and Escalator Service Agreement ("Service Agreement") executed between Schindler and plaintiffs. *Id.*

## II. LEGAL STANDARDS

### 1. SUMMARY JUDGMENT

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment

4

simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## 2. Contract Interpretation - Eight Corners Rule

"Texas courts interpret insurance policies according to the rules of contract construction." *de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument. See *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). "[T]he parties' intent is governed by what they said, not by what they intended to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation omitted).

An insurance policy that can be given a definite or certain legal meaning is not ambiguous, and must be construed by the court as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). An ambiguity exists where a policy is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings, unless otherwise defined by the parties. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). "'Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to create an ambiguity.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F.Supp.2d 926, 932 (S.D. Tex. 2003) (quoting *Forbau v.*

5

*Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994)). "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F.Supp.2d at 932; see also *Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex.App.-Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded"). And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F.Supp.2d at 931.

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Nautilus Ins. Co.*, 566 F.3d at 454. "The duty to defend does not depend upon the truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend . . . .'" *Id.* (internal citations omitted).

"The insured bears the initial burden of showing that the claim . . . is potentially within the insurance policy's scope of coverage." *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. But, if the facts in the pleadings give rise to any claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). If coverage is proven by the insured then, to avoid liability, the insurer must prove that the loss falls within an

exclusion. *Gilbert Texas Constr. L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insurer proves an applicable exclusion, the burden shifts back to the insured that the claim is still covered because of an exception to the exclusion. *Id.* Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into the pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. See *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F.Supp.2d at 931; see also *Am. Auto., Inc. v. Mayfield*, 287 F.Supp.2d 661, 664 (N.D. Tex. 2003). Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

### III. ANALYSIS

**1. OCP Policy**

Section I of the OCP Policy issued to Grupo Zocalo, in a section entitled "coverages," provides that:

> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking those damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> **b.** This insurance applies to "bodily injury". . . only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an occurrence and arises out of
> >
> > > **(a)** Operations performed for you by the "contractor" at the location specified in the Declarations; or

7

>> **(b)** Your acts or omissions in connection with the general supervision of such operations; and
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period.

Dkt. 11-5 at 164. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id*. at 170. Occurrence is defined as an "accident." *Id*. at 171. Switzer suffered "bodily injury" caused by an "occurrence" arising out of "operations performed for [plaintiffs] by [Schindler]. . ." during the policy period. Viewing the factual allegations of the original petition liberally in favor of plaintiffs as the insureds, a claim that is "potentially within the insurance policy's scope of coverage" has been alleged. *Harken Exploration Co.*, 261 F.3d at 471.

Next, it must be determined whether Zurich has proven an applicable exception. The first section of the OCP Policy continues with exclusions to the policy:

> **SECTION I – COVERAGES**
> **BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **2. Exclusions**
> This insurance does not apply to:
>
>> **d. Acts or Omissions by You and Your Employees**
>> "Bodily injury" or "property damage" arising out of your, or your "employees," acts or omissions other than general supervision of "work" performed for you by the "contractor."

Dkt. 11-5 at 165. In the underlying lawsuit, Switzer alleges that his injuries were caused by the negligence of plaintiffs in failing to repair the escape hatch on the freight elevator, or to warn him about its defective condition, despite two citations from the Texas state elevator inspector. Dkt. 1-7 at 4. These allegations clearly fit within the exclusion for "acts or omissions" by Grupo Zocalo or its employees. There are no allegations that Switzer's injuries arose from plaintiffs' general supervision of his work. Therefore, Zurich has met its burden of proving an applicable exception,

and has shifted the burden back to plaintiffs to prove an exception to the exclusion. *Gilbert Texas Constr. L.P.*, 327 S.W.3d at 124. Plaintiffs have failed to present evidence of an applicable exception. Accordingly, the allegations by Switzer in the underlying litigation are not covered by the OCP Policy issued to Grupo Zocalo and Zurich has no obligation to defend the plaintiffs in the underlying case.

**2. CGL Policy**

Unlike the OCP Policy, the court must determine if Plaintiffs are additional insureds for purposes of the CGL Policy issued to Schindler. The CGL Policy contains the following additional insured endorsement:

> **Name of Additional Insured Person(s) Or Organization(s):**
> Only those persons or organizations where required by written contract.
>
> **Location(s) of Covered Operations:**
> Only those locations required by written contract.
>
> **A.** **Section II- Who Is An Insured** is amended to include as an additional insured the person(s) or organizations shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
> **2.** The acts or omissions of those acting on your behalf
>
> In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Dkt. 11-4 at 132. The Blanket Additional Insured Endorsement of the CGL Policy amends the definition of who is an insured person to include "any person or organization for whom [Schindler] has specifically agreed by written contract to procure bodily injury, property damage and personal liability insurance. . ." Dkt 11-4 at 110. The parties contest whether the Service Agreement makes plaintiffs additional insureds under the CGL Policy. The court need not reach this issue, however, because assuming, without deciding, that plaintiffs qualify as additional insureds under the CGL

Policy, plaintiffs' assertion that they are entitled to a defense and indemnity for Switzer's injuries would still fail because they cannot meet the causation requirement of the CGL Policy.

> The Blanket Additional Insured Endorsement of the CGL Policy states:
>
> The "persons insureds" provision is amended to include as an insured any person or organization for whom the Named Insured has specifically agreed by written contract to procure bodily injury, property damage and personal injury liability insurance provided that:
>
> C.   This insurance applies only to bodily injury or property damage *arising solely out of* negligent acts, errors, omissions of [Schindler] while [Schindler] is actively engaged in the operations at the site designated in the contract between [Schindler] and the additional Insured.

Dkt. 10-4 at 2 (emphasis added). Therefore, coverage for additional insureds extends only to bodily injury "arising solely out of negligent acts, errors, omissions of [Schindler] while [Schindler was] engaged in operations at the site designated in the contract between [Schindler] and the additional insured." Dkt. 10-4 at 2. An insurance policy that can be given a definite legal meaning is not ambiguous, and must be construed by the court as a matter of law. *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157. Additionally, courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings. *Valence Operating Co.*, 164 S.W.3d at 662 (Tex. 2005). The plain language of the CGL Policy blanket additional insured endorsement provides that the policy is applicable only to injuries arising solely out of the negligence of Schindler or Schindler's agents. Dkt. 10-4 at 2. No such allegations are made in the underlying lawsuit. Rather, the negligence and failure to warn claims are asserted against plaintiffs in this case, and not Schindler. Therefore, plaintiffs have failed to satisfy their burden of showing that the claim is potentially within the scope of coverage of the CGL Policy, and Zurich has no obligation to defend plaintiffs in the underlying state litigation. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654.

**3. Duty to Indemnify**

The duty to indemnify is a separate and distinct duty from the duty to defend. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). The duty to defend is determined by reviewing the policy and the factual allegations in the underlying pleadings. *Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co.*, 292 S.W.3d 48, 65 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). Unlike the duty to defend, the duty to indemnify turns not on the existence of allegations potentially within the policy's coverage, but is determined with reference to the actual facts established in the underlying lawsuit. *Id*. "Thus, generally, the duty to defend can be determined prior to the resolution of the underlying lawsuit, while the duty to indemnify *may not* be justiciable until the question of the insured's liability has been resolved." *Id*. (emphasis added). However, "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (italics in original).

In *Griffin*, the insurance policy covered the negligent acts of the insured resulting in an "auto accident," but excluded coverage for intentional acts. *Pine Oak Builders, Inc.*, 292 S.W.3d at 65. The plaintiff in *Griffin* asserted legal theories of negligence and gross negligence, but the facts alleged revealed that his damages were caused by intentional acts.[2] *Id*. The Texas supreme court concluded that it was impossible for facts to be developed at trial that would require indemnification of the insured. *Id*. Accordingly, declaratory judgement was entered for the insurer on the issue of indemnification. *Id*. at 66.

---

[2]The plaintiff in *Griffin* was injured in a drive-by shooting.

In this case, it is likewise not possible for facts to be developed at trial that would require Zurich to indemnify plaintiffs under either policy. With respect to the OCP Policy issued to Grupo Zocalo, the facts alleged by Switzer would only permit a finding that the injury was the result of an act or omission by Grupo Zocalo or its employees (Grupo Zocalo's failure to repair the welds on the hatch, or to warn Switzer of the defect), and such injuries are specifically excluded from coverage under the OCP Policy. For the same reason, indemnity is foreclosed with respect to the CGL Policy issued to Schindler, because indemnity under that policy extends only to injuries "arising solely" out of the negligence of Schindler or Schindler's agents. Again, the factual allegations in the underlying suit clearly assert that plaintiffs' acts or omissions were the cause of his injury, and no construction of those facts would permit a finding that Switzer's injuries were caused solely by Schindler's negligence. *Farmers Texas County Mut. Ins. Co.*, 955 S.W.2d at 84. Zurich, therefore, has no duty to indemnify plaintiffs for the same reasons that it has no duty to provide them a defense in the state court lawsuit. *Id.*

## III. CONCLUSION

Viewing the factual allegations of the original petition liberally in favor of plaintiffs as the insureds, a claim that is "potentially within the insurance policy's scope of coverage" has been alleged under the OCP Policy issued to Grupo Zocalo. *Harken Exploration Co.*, 261 F.3d at 471. However, Zurich has established that an exclusion applies under the OCP Policy and plaintiffs failed to satisfy their burden of proving an exception to that exclusion. *Gilbert Texas Constr. L.P.*, 327 S.W.3d at 124. Further, even assuming that plaintiffs qualify as additional insureds under the CGL Policy issued to Schindler, Switzer's injuries do not constitute a claim that is potentially within that policy's coverage. *Harken Exploration Co.,* 261 F.3d at 471. Accordingly, plaintiffs motion for partial summary judgment (Dkt. 10) is DENIED and Zurich American Insurance Company's motion for summary judgment (Dkt. 11) is GRANTED.

Signed at Houston, Texas on June 24, 2011.

_____
Gray H. Miller
United States District Judge